# CLIFFORD G. BAILEY v. CITY OF ALBERT LEA AND OTHERS.

192 N. W. (2d) 445.

November 12, 1971—Nos. 42971, 43001.

*Nemerov Law Offices* and *Irving Nemerov,* for appellant.
*James E. Broberg,* City Attorney, for respondents.

NELSON, JUSTICE.

Consolidated appeals from a judgment and from a subsequent order of the district court denying a motion for amended findings or for a new trial.

Respondent city of Albert Lea is a municipal corporation classified as a city of the third class in the State of Minnesota. It has been a home-rule charter city since May 10, 1927, and operates under a council-manager form of city government.

Prior to July 1960, petitioner-appellant, Clifford G. Bailey, had been a captain with the Minneapolis Police Department and had reached eligibility for retirement from the Minneapolis police force. In the early part of that year petitioner, then approaching age 50, was interviewed for the position of chief of police of Albert Lea by respondent city's manager, whose recommendation for appointment of petitioner was approved by the city council on May 23, 1960, effective July 1, 1960. Permanent employment status was approved January 1, 1961, after the required 6-month probation period. No written contract of employment was signed.

At the time petitioner began his employment with respondent city, retirement age for city policemen was 65 and eligibility for a pension from the Albert Lea Policemen's Relief Association (hereafter called the Relief Association) required at least 20 years' service with the Albert Lea police force. The Relief Association retirement plan had been formed pursuant to Minn. St. 423.37 to 423.392 and was funded by money deducted from the policemen's salaries and money levied by respondent city. The city has not at any time established a police civil service commission pursuant to Minn. St. c. 419. In August 1963 respondent city's council passed an amendment to the personnel rules lowering the retirement age for policemen and firemen to 60, effective January 1, 1964. The 60-year retirement age has remained in effect since that time.

The 1960 personnel rules, effective at the time petitioner was hired, state:

"RETIREMENT BENEFITS

\* \* \* \* \*

"The City considers age 65 as normal retirement age except in those cases that health or disability may require retirement at an earlier age.

\* \* \* \* \*

"It is the intent that all present employees (January 1, 1958) with 10 years or more of service as a full time employee will be

given every opportunity to gain eligibility for retirement benefits prior to full retirement. The City Manager will be happy to go over individual problems with employees and discuss matters of health, work assignments as they affect health and retirement."

The 1964 personnel rules state:

"RETIREMENT BENEFITS

\* \* \* \* \*

"The City considers age 60 for Policemen and Firemen and age 65 for general employees as a normal retirement age except in those cases that health or disability may require retirement at an earlier age."

The 1968 personnel rules state:

"RETIREMENT BENEFITS

\* \* \* \* \*

"4. The City considers age 60 for Policemen and Firemen and age 65 for general employees as a normal retirement age except in those cases that health or disability may require retirement at an earlier age.

"5. The City Manager may extend retirement beyond the normal retirement date on a year to year basis upon concurrence of the City Council provided the work of the employee is satisfactory and his health is such that he can properly fulfill his duties. The City Manager shall require a yearly physical examination of the employee for such extension. Only where there is some compelling reason will the City Manager recommend extension."

The 1970 personnel rules regarding retirement are similar to those provisions in the 1968 rules.

In the latter part of 1967, petitioner was notified that he was nearing the retirement age of 60 years, but when he conferred with the city manager, a mistaken birthdate was corrected, and petitioner took no further action at that time. In early August 1969, the current city manager, respondent John W. Elwell, in-

formed petitioner that his retirement age would be reached the latter part of August 1970. Several discussions took place between these two concerning retirement, and on March 16, 1970, petitioner was given written notice by the city manager that he was to retire. This letter was in response to a letter from petitioner wherein he expressed his desire for a hearing before the city council to discuss the matter of retirement age. Petitioner requested the city council in the spring of 1970 to suspend the effect of the mandatory retirement age so far as it affected him and certain others on the police force; however, his request was denied. He thereafter made a demand for hearing pursuant to the Veterans Preference Act, which was also denied.

Petitioner then brought this proceeding for mandamus in the district court. After trial, the trial court entered findings ordering judgment for respondents, quashing petitioner's writ of mandamus, and dismissing his complaint on the merits with prejudice; quashing a restraining order which ordered respondent city to retain petitioner as chief of police; quashing a restraining order which prohibited the city and other respondents named from advertising for new applicants for the position of chief of police; and declaring petitioner duly retired as chief of police effective September 1, 1970. The trial court found that petitioner is entitled to all retirement benefits from the retirement fund of the Relief Association which have accrued and matured up to the date that he leaves the service as chief of police of respondent city. We agree.

Respondent city has no control, supervision, or participation in the Relief Association except to levy certain sums to be paid to the association as the city's share in the financing of the retirement fund. The association is a private corporation which, subject to statutory regulation, is set up and controlled by its membership made up of policemen of respondent city.

The record herein reveals that there was no written contract for a definite term of years between petitioner and respondent city. Even if there had been such a contract, petitioner could not

have achieved the necessary 20 years of service to secure full retirement benefits from the Relief Association. He was nearly 50 years of age when he assumed the position of chief of police, and at the age of 65 years he would still have been 5 years short of the necessary 20 years required for a matured retirement pension. Furthermore, petitioner may be assumed to have been familiar with the functioning of the Relief Association due to the fact that he had theretofore accumulated over 20 years with the Minneapolis Police Retirement Association and had acquired matured retirement benefits in that association.

A perusal of the briefs and the record herein makes it clear that the lower court had sufficient evidence before it to make a determination that petitioner could be categorized as "head of a department." He had charge of all work done by his department; his work required technical and professional training; he was the highest authority at the level of the city government pertaining to his official duties; he supervised all the work in his department; the success of his department was largely dependent upon his techniques; his duties were more than merely different from those of other employees; and he had the power to hire and fire subordinates. State ex rel. Michie v. Walleen, 185 Minn. 329, 241 N. W. 318 (1932); State ex rel. Sprague v. Heise, 243 Minn. 367, 67 N. W. 2d 907 (1954); State ex rel. McGinnis v. Police Civil Service Comm. 253 Minn. 62, 91 N. W. 2d 154 (1958).

No testimony was offered contradicting that of respondent city's manager or the documentary evidence before the court, nor did the testimony place petitioner beyond the bounds established by the case law applicable to the definition of "head of a department." It is thus clear that the lower court reached the proper conclusion in determining that petitioner was the head of a department and therefore could not avail himself of the Veterans Preference Act to avoid retirement at the age of 60 years.

The evidence, statutory authority, and case law applicable substantiate and uphold the determination of the trial court.

Affirmed.

OTIS, JUSTICE (concurring specially).
I concur in the result.

ROGOSHESKE, JUSTICE (concurring specially).
I concur in the result.

PETERSON, JUSTICE (concurring specially).
I concur in the result.

KELLY, JUSTICE (concurring specially).
I concur in the result.